## THE EFFIE J. SIMMONS.

*(District Court, D. Massachusetts.    April 15, 1881.)*

1. TUG AND TOW—NEGLIGENCE.

   A tug is bound to know the nature of the bottom of the stream and the depth of the water in which it is employed.

2. SAME—SAME.

   A schooner, while being towed up the Charles river, as the tide was running out, grounded with her head up stream, in such a position that she would probably have sustained no injury if she had not been disturbed. The tug, however, attempted to haul her off, and finally left her with her stern fast where it first touched, but her head projecting into the channel, where the bottom was sufficiently uneven to cause her to strain and break. *Held*, that the tug was in fault in thus attempting to pull the vessel off.—[ED.

*F. Dodge* and *E. L. Dodge,* for libellant.

*Frank Goodwin,* for respondents.

NELSON, D. J.    The respondents undertook, by their tug-boat, the Charles River, to tow the schooner Effie J. Simmons, laden with coal, up Charles river, from Crague's bridge to Henderson's wharf, in Brighton. As the depth of the channel at high water is only 12 feet, and the draught of the schooner, as she was loaded, was $11\frac{1}{2}$ feet, this could be done only at or very near high water. On the passage up the river the schooner grounded and sustained injury. The accident seems to have occurred in this way: When the two vessels reached a point in the river opposite Gouch's wharf, the tide having then begun to fall, the tug slackened her speed, and passed a little to the south of what may be called the low-water channel of the river, in order to avoid another vessel then lying moored to the northerly bank with an anchor out into the stream. Where the schooner passed the water had slightly diminished in depth, and her stern touched bottom and stuck fast. The bottom at this point, up and down the stream, was smooth and even; and if the schooner had been left in the position she was in when she touched,—that is, headed directly up the stream,—she would have rested, as the tide fell, evenly on the whole length of her keel, and in all

probability would have suffered no injury. But the tug attempted to get her off by hauling her head round towards the northerly bank, and, not succeeding in accomplishing this, finally left her with her stern fast where it first touched, and her head projecting into the channel, where the water was slightly deeper. As the tide receded the schooner was left lying across the edge of the channel, where the bottom was sufficiently uneven to cause her to strain and break. It seems to me that this was negligence in the tug. The fault was not in the grounding of the schooner, but in the unwise measures taken to pull her off after she had grounded.

It appeared that it is usual for vessels to lie aground in the river at this and other points, but always with the stream, in which direction the bottom is smooth and even, and never across the channel, as in this case. The tug was bound to know the nature of the bottom as well as the depth of the water, and it was through her ignorance of both, or her carelessness, that the schooner was left in her position, where she was sure to sustain injury.

It also appeared that the schooner was slightly injured in passing through one of the draw-bridges on her way up the river. The respondents admitted their liability for this injury, and it is to be included in the assessment of damages.

Interlocutory decree for libellant.